IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**THE MONONGALIA COUNTY
COAL COMPANY,**

    **Plaintiff,**

v.                                            Civ. Action No. 1:18-cv-132
                                                              (Kleeh)

**UNITED MINE WORKERS OF
AMERICA, INTERNATIONAL UNION, and
UNITED MINE WORKERS OF AMERICA,
LOCAL UNION 1702,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 11], GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], AND VACATING ARBITRATION AWARD**

Pending before the Court are cross motions for summary judgment filed by the Plaintiff and Counter-Defendant, The Monongalia County Coal Company ("Plaintiff"), and the Defendants and Counter-Claimants, the United Mine Workers of America, International Union, and the United Mine Workers of America, Local Union 1702 ("Defendants"). For the reasons discussed below, the Court grants Plaintiff's motion and denies Defendants' motion.

    **I.    PROCEDURAL HISTORY**

Plaintiff initiated this action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, by filing a Complaint to vacate an arbitration award. United States District

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 11], GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND VACATING ARBITRATION AWARD**

Judge Irene M. Keeley set a briefing schedule in this matter and ordered the parties to file a joint stipulated record, cross motions for summary judgment, and response briefs. The parties have submitted all of the above, and the cross motions for summary judgment are ripe for consideration. This case was transferred to United States District Judge Thomas S. Kleeh on December 1, 2018.

## II. BACKGROUND

The complaint and the pending motions for summary judgment stem from a grievance filed by a bargaining unit employee at the Monongalia County Mine in West Virginia. The terms and conditions for bargaining unit employees at the Monongalia County Mine are set forth in the 2016 National Bituminous Coal Wage Agreement ("NBCWA" or the "agreement"). The NBCWA provides the following regarding "Work Jurisdiction":

> The production of coal, including removal of over-burden and coal waste, preparation, processing and cleaning of coal and transportation of coal (except by waterway or rail not owned by Employer), repair and maintenance work normally performed at the mine or at a central shop of the Employer and maintenance of gob piles and mine roads, and work of the type customarily related to all of the above shall be performed by classified Employees of the Employer covered by and in accordance with the terms of this Agreement.  Contracting, subcontracting, leasing and subleasing, and construction

**MCCC V. UMWA** 1:18-CV-132

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 11], GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND VACATING ARBITRATION AWARD**

> work, as defined herein, will be conducted in accordance with the provisions of this Article.
>
> Nothing in this section will be construed to diminish the jurisdiction, express or implied, of the United Mine Workers.

ECF No. 10-1 at 10-11.

The agreement also distinguishes between (1) Repair and Maintenance Work and (2) Construction Work. <u>Id.</u> at 12-13. Finally, the NBCWA provides the following regarding resolution of disputes:

> The United Mine Workers of America and the Employers agree and affirm that, except as provided herein, they will maintain the integrity of this contract and that all disputes and claims which are settled by agreement shall be settled by the machinery provided in the "Settlement of Disputes" Article of this agreement . . . , it being the purpose of this provision to provide for the settlement of all such disputes and claims through the machinery in this contract and by collective bargaining agreement without recourse to the courts.

ECF No. 10-2 at 58. It further provides that "[e]xpenses and fees incident to the service of an arbitrator shall be paid equally by the Employer affected and by the UMWA district affected" and does not comment upon other costs potentially incurred by parties during arbitration. <u>Id.</u> at 55.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 11], GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND VACATING ARBITRATION AWARD**

Defendants, through the grievant, Tim Gibson (the "Grievant"), alleged that Plaintiff "violated the terms of the NBCWA by having contractors perform classified work, including, but not limited to, unspooling, distributing and hanging hoses, cables and data line on the monorail system in the Monongalia County Mine . . . ." ECF No. 1 at ¶ 8. Defendants requested a cease and desist order and 48 hours of double time paid to the Grievant. Id.

Arbitrator Ralph H. Colflesh, Jr. (the "Arbitrator") held a hearing on April 27, 2018, and issued a decision on May 8, 2018. Id. ¶¶ 9–10. The Arbitrator found that subcontracting took place and that the subcontracting was prohibited by the NBCWA. ECF No. 1-1 at 12. He also found that there was "no actual loss" suffered by the Grievant. Id. at 8. Still, he wrote that he "concur[s] with the principle . . . that in general every sustained grievance must have some remedy." Id. at 15. He wrote that "the Union suffered a loss because its contractual work jurisdiction was violated." Id. The Arbitrator awarded "the Union its costs in preparing and presenting [the] grievance." Id. at 16.

Plaintiff argues that the award did not draw its essence from the contract because monetary damages may only be imposed

**MCCC V. UMWA**                                                1:18-CV-132

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 11], GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND VACATING ARBITRATION AWARD**

to compensate for loss. Because the Arbitrator found that the Grievant suffered no loss, Plaintiff argues, the award was punitive in nature. Defendants argue that the award is compensatory in nature and that it is entitled to judicial deference.

### III. GOVERNING LAW

This Court may review labor arbitrators' decisions under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, but this power of review is "extremely limited." Cannelton Indus., Inc. v. Dist. 17, UMWA, 951 F.2d 591, 593 (4th Cir. 1991) (citing United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960)). This is because "[t]he parties to a collective bargaining agreement bargained for the arbitrator's interpretation, and 'so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation . . . is different from his.'" Island Creek Coal Co. v. Dist. 28, UMWA, 29 F.3d 126, 129 (4th Cir. 1994) (citing Enterprise Wheel, 363 U.S. at 599)). The Supreme Court of the United States, in the "Steelworkers Trilogy,"[1] has "emphasized that federal courts

---

[1] The Steelworkers Trilogy includes the following cases: United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960); United Steelworkers of America v. Warrior &

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 11], GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND VACATING ARBITRATION AWARD**

should refuse to review the merits of an arbitration award under a collective bargaining agreement." Mutual Mining, Inc. v. Dist. 17, UMWA, 47 F.3d 1165, at *2 (4th Cir. 1995) (unpublished). Both an arbitrator's findings of fact and interpretation of the law are accorded great deference. Upshur Coals Corp. v. UMWA, Dist. 31, 933 F.2d 225, 229 (1991). In addition, "[t]he selection of remedies is almost exclusively within the arbitrator's domain." Cannelton, 951 F.2d at 593-54 (citing United Paperworkers Int'l Union v. Misco, 484 U.S. 29 (1987)).

Still, there are some limitations on arbitration awards. The award "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." Misco, 484 U.S. at 38. In addition, an arbitrator may not "impose a punitive award or punitive damages" unless a provision in the collective bargaining agreement provides for them. Island Creek, 29 F.3d at 129 (citing Cannelton, 951 F.2d at 594). Notably, under Fourth Circuit precedent, compensation for a loss of union work can be permissible. See Cannelton, 951 F.2d at 594 (writing that if the arbitrator "ordered monetary damages to compensate employees for work they were entitled to

---

Gulf Navigation Co., 363 U.S. 574 (1960); and United Steelworkers of America v. American Mfg. Co., 363 U.S. 564 (1960).

**MCCC V. UMWA**                                                     1:18-CV-132

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 11], GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], AND VACATING ARBITRATION AWARD**

perform under the NBCWA, the award might reasonably be construed as compensatory damages for a cognizable loss of union work").

In deciding whether an award is punitive or whether it draws its essence from the agreement, courts should be mindful that arbitrators "need not give their reasons for an award," but courts may rely on arbitrators' reasoning to determine whether the arbitrator has applied "his own brand of industrial justice." Id. In such situations, a court may vacate an award or remand for clarification. Id. In reviewing arbitration awards, courts "must be concerned not to broaden the scope of judicial review of arbitration decisions nor to lengthen a process that is intended to resolve labor disputes quickly." Id. at 595.

Because punitive awards are invalid, the Fourth Circuit has upheld district court decisions vacating awards when no evidence of monetary loss was produced. See Westinghouse v. IBEW, 561 F.2d 521, 523–24 (4th Cir. 1977) (noting that "[w]ith respect to vacation shutdowns, compensatory damages may be awarded only when a breach of the bargaining agreement causes a monetary loss"); see also Baltimore Reg'l Joint Bd. v. Webster Clothes, 596 F.2d 95, 98 (4th Cir. 1979) (concluding that there had been no showing of actual damages, and, therefore, the arbitrator had issued a punitive award).

**MCCC V. UMWA** 1:18-CV-132

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 11], GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND VACATING ARBITRATION AWARD**

It is well-established that a "labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law — the practices of the industry and the shop — is equally a part of the collective bargaining agreement although not expressed in it." Gulf Navigation, 363 U.S. 574, 581-82 (1960). This includes past arbitral decisions. Clinchfield Coal Co. v. Dist. 28, UMWA, 738 F.2d 998, 999 (4th Cir. 1984). Further, the NBCWA expressly provides that "[a]ll decisions of the Arbitration Review Board rendered prior to the expiration of the National Bituminous Coal Wage Agreement of 1978 shall continue to have precedential effect under this Agreement to the extent that the basis for such decisions have not been modified by subsequent changes in this Agreement." ECF No. 10-2 at 56.

## IV. DISCUSSION

This Court recognizes its limited role in deciding arbitration disputes. However, under Fourth Circuit precedent, it is clear that a lack of evidence of monetary loss will render an award non-compensatory and, therefore, punitive. Here, certain aspects of the award weigh in favor of finding that the award is compensatory. For instance, the Arbitrator wrote that "the Union suffered a loss because its contractual work

**MCCC V. UMWA** 1:18-CV-132

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 11], GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND VACATING ARBITRATION AWARD**

jurisdiction was violated." ECF No. 1-1 at 15. Other aspects of the award, however, weigh in favor of finding that it is punitive and does not draw its essence from the contract.

Importantly, the Arbitrator did not cite any calculations of the amount of loss. To the contrary, the Arbitrator specifically found that the Grievant "suffered no actual loss." ECF No. 1-1 at 8. Without even minimal "actual loss" found to be incurred by either the Grievant or the Union, a monetary award of any amount can hardly be considered compensatory. The monetary award was based on the costs of preparing the grievance, not on actual loss by Defendants that stemmed from Plaintiff's breach. Further, the Arbitrator wrote that "in general every sustained grievance must have some remedy." Id. at 15. In discussing prior arbitral awards, he wrote that "there is nothing . . . that prohibits damages in general for breaches of the Agreement." Id. at 14. This ideology flouts the principle that monetary awards are valid only for compensatory purposes, absent contract language authorizing punitive awards.

Defendants compare the Arbitrator's award to the award issued in Bakery and Confectionary Workers Local 369 v. Cotton Baking Co., 514 F.2d 1235 (5th Cir. 1975). The Court agrees that some similarities exist. For instance, in Cotton Baking, the

MCCC V. UMWA                                                  1:18-CV-132

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 11], GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], AND VACATING ARBITRATION AWARD**

arbitrator found that no laborer had actually lost work based on the company's assignment of work to a rival union. Id. at 1236. Despite the fact that there was no work lost by any individual laborers, the arbitrator determined that the union was damaged by the denial of the work opportunity. Id. In citing this case, however, Defendants ignored an important distinction. The arbitrator in Cotton Baking awarded the union one year of wages for a dock porter. Id. This calculation was based on actual lost work by the union. The Arbitrator here, on the other hand, did not calculate damages based on lost work. Instead, he awarded the Union its costs in preparing the grievance.

Defendants cite a number of "awards in which the arbitrator granted a compensatory award, despite the fact that no miner was out of work when subcontracting occurred." See ECF No. 11-1 at 19. The same distinction exists in those cases. See ECF No. 10-5 at 128–44 (awarding "a sum . . . equivalent to the straight-time rate for the time attributable to the hours worked by the contractors installing mechanical belt splices on October 18, 2015"); ECF No. 10-6 at 19–27 (finding that "two Grievants who live closest to the mine portal shall each be paid two and one-half (2-1/2) hours at the rate of time and one-half (1-1/2)").

MCCC V. UMWA                                                1:18-CV-132

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 11], GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], AND VACATING ARBITRATION AWARD**

In both cases, the arbitrator issued an award based on a calculation of work lost.

The parties do not dispute that Plaintiff breached the NBCWA. Had the Arbitrator calculated Defendants' loss based on the actual breach, the award could possibly be upheld. As discussed above, compensating a Union based upon loss of Union work has been held to be permissible under the NBCWA. See Cannelton, 951 F.2d at 594. The Arbitrator did not, however, take that approach. His award contained no supporting findings of monetary loss to establish the award as compensatory, and it did not find any basis in the language of the contract. Instead, the Arbitrator chose to award Defendants their costs in preparing the grievance. The monetary award issued did not stem from the breach of the contract but, instead, stemmed from the Arbitrator's own sense of industrial justice.

## V.  CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' motion for summary judgment [ECF No. 11], **GRANTS** Plaintiff's motion for summary judgment [ECF No. 12], **VACATES** the arbitration award, and **ORDERS** this case **STRICKEN** from the Court's active docket.

It is so **ORDERED**.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 11], GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND VACATING ARBITRATION AWARD**

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: September 5, 2019

*/s/ Tom S. Kleeh*
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE